UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| OLD TOWN CANOE COMPANY, )<br>)<br>      Plaintiff, )<br>)<br>      v. )<br>)<br>CONTINENTAL CASUALTY )<br>COMPANY, )<br>)<br>      Defendant. ) | Civil No. 05-25-B-W |

**ORDER ON PLAINTIFF OLD TOWN CANOE COMPANY'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

This motion addresses whether a property loss exclusion for "extremes of temperature, changes of temperature" is ambiguous. Old Town Canoe Company (Old Town) filed suit against its commercial property insurer Continental Casualty Insurance Company (Continental), claiming it sustained a covered loss when 1,776 Old Town watercrafts warped in the summer of 2003 after being exposed to high temperatures inside their storage buildings. Old Town argues that because the phrase "extremes of temperature, changes of temperature" may refer to the temperature of the outside ambient air, not inside the storage trailers, the phrase is ambiguous and, as such, must be construed against the insurer. Continental responds that the phrase unambiguously refers both to outside and inside temperature. This Court agrees with Old Town and grants its Motion for Partial Summary Judgment.

    **I.**    **Statement of Facts**

Old Town manufactures and sells kayaks and canoes. *Pl.'s Statement of Material Fact* (PSMF) at ¶ 1 (Docket # 12 – Attach. 2). In August 2003, Old Town sustained a loss to 1,776 canoes and kayaks while the watercrafts were stored in trailers on its premises. *Id.* at ¶ 6. The

damage to the watercrafts was the direct result of heat in the storage trailers.[1]  *Def.'s Response to Pl.'s Statement of Material Fact* (DRPSMF) at ¶ 10 (Docket # 14).  Continental insures Old Town[2] under a commercial property policy, which provides coverage for personal property losses at insured locations.  The policy contains the following exclusion:

> **3.   Unless otherwise endorsed herein, or limited in Clause 4 of Section I, Declarations, this Policy does <u>not</u> insure against loss or damage caused by or resulting from the following:** *however, if loss or damage from a peril not excluded herein ensues, then this policy shall cover only for such ensuing loss or damage*:
>
> j.   dampness or dryness of atmosphere, extremes of temperature, changes of temperature, decay, deterioration, smog, shrinkage, evaporation, contamination, mold, bacteria, virus, fungus, corrosion, rust, wet or dry rot, marring or scratching, loss of weight, change in flavor, color, texture, or finish, *unless such loss or damage is caused directly by perils not otherwise excluded.*

Appendix Tab C to Statement of Material Facts at 61 (Docket # 12 – Attach. 5)(underlining and italics in original).

## II.   Legal Standard

A motion for summary judgment will be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The First Circuit has defined "material" to mean "a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved

---

[1] Old Town's Statement of Material Facts does not allege that the damage to the watercrafts was caused by heat in its storage trailers; however, Continental asserts this fact in qualifying its response to Old Town's Statement of Material Fact 10.  *See* DRPSMF ¶ 10.  To reach the temperature exclusion, this Court assumes for purposes of the partial motion for summary judgment that high temperatures in the storage sheds caused the watercraft damages, which Old Town claims are payable under the Continental policy.

[2] The named insured is Johnson Outdoors, Inc.  As an affiliate of Johnson over which Johnson maintains more than fifty percent control, Old Town is also a named insured.  *See* PSMF ¶¶ 3-5; DRPSMF ¶¶ 3-5.

2

favorably to the nonmovant." *McCarthy v. Northwest Airlines, Inc.* 56 F.3d 313, 315 (1st Cir. 1995). It has defined "genuine" as "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." *Id*. The moving party must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The trial court is obligated to view the entire record "in the light most hospitable to the nonmovant" and indulge "all reasonable inferences in that party's favor." *Cadle Co. v. Hayes*, 116 F.3d 957, 959 (1st Cir. 1997); *see also Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990).

### III.   Discussion

#### A. The Law

In a review of an insurance contract, the "meaning of language is a question of law." *Foremost Ins. Co. v. Levesque,* 2005 ME 34, ¶ 7, 868 A.2d 244, 246. Any ambiguity in an insurance policy "must be resolved against the insurer and in favor of coverage." *Id.* In particular, policy exclusions are disfavored, *id.*, and must be construed "strictly against the insurer and liberally in favor of the insured." *Acadia Ins. Co. v. Vermont Mut. Ins. Co.,* 2004 ME 121, ¶ 5, 860 A.2d 390, 392 (quoting *Union Mut. Fire Ins. Co. v. Commercial Union Ins. Co.,* 521 A.2d 308, 311 (Me. 1987)). Contract language is ambiguous if it is "reasonably susceptible of different interpretations". *Cambridge Mut. Fire Ins. Co. v. Vallee,* 687 A.2d 956, 957 (Me. 1996). The court must measure ambiguity from the viewpoint of "an average person, untrained in either the law or the insurance field, in light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured." *Peerless Ins. Co. v. Wood,* 685 A.2d 1173, 1174 (Me. 1996). Thus, the question presented is whether damages caused by inside high

temperatures are unambiguously excluded from coverage by the "extremes of temperature, changes of temperature" exclusion.[3]

The Court must "first examine relevant policy language to determine whether it is unambiguous; if so, it is enforced as written." *W. World Ins. Co. v. Am. & Foreign Ins. Co.,* 180 F. Supp. 2d 224, 230 (D. Me. 2002); *Travelers Indem. Co., v. Dingwell,* 414 A.2d 220, 223 (Me. 1980). The function of the court "is not to make a new contract for the parties by enlarging or diminishing its terms, but is to ascertain the meaning and intention of [the contract] *actually made.*" *Apgar v. Commercial Union Ins. Co.,* 683 A.2d 497, 500 (Me. 1996)(citations and internal quotation marks omitted)(emphasis in original). The Court must interpret unambiguous language according to its "plain and commonly accepted meaning." *Brackett v. Middlesex Ins. Co.,* 486 A.2d 1188, 1190 (Me. 1985).

**B. The Contract**

The temperature exclusion is contained in Part 3, which addresses exclusions caused by certain uninsured events.[4] The full provision excludes coverage for:

> k. Dampness or dryness of atmosphere, extremes of temperature, changes of temperature, decay, deterioration, smog, shrinkage, evaporation, contamination, mold, bacteria, virus, fungus, corrosion, erosion, rust, wet or dry rot, marring or scratching, loss of weight, change in flavor, color, texture, or finish, *unless such loss or damage is caused directly by perils not otherwise excluded.* (italics in original).

---

[3] Old Town's argument focuses solely on whether the term, "temperature" is ambiguous. For purposes of this motion only, this Court assumes that the temperature inside the storage trailers was "extreme" within the meaning of the policy exclusion. This does not mean, however, that Old Town has waived argument on this issue. Old Town expressly leaves for another day whether the facts support the policy exclusion for "extremes" of temperatures. *See Pl.'s Reply Mem.* at 2, n.4 (Docket # 15).

[4] Part 3 allows for the possibility that coverage could be extended by endorsement or that the loss might occur as a result of a peril that is not excluded. The parties do not argue that coverage was separately provided for or that this loss occurred as a result of an otherwise insured peril.

This exclusion is an odd amalgam of seemingly unrelated events, the combination of which increases its inherent ambiguity. For the most part, the exclusion seems directed toward damage caused by nature, not by man, and occurring with the passage of time. Dampness or dryness of the atmosphere, decay, deterioration, smog, shrinkage, evaporation, contamination, mold, bacteria, virus, fungus, corrosion, erosion, rust, wet or dry rot, all can be associated with the damage caused by the forces of nature occurring over time. Marring or scratching, loss of weight, change in flavor, color, texture or finish are not as easily categorized; some could be associated with natural, as opposed to man-made causes, and with the deterioration associated with aging. This analysis supports the conclusion that in referring to temperature, the exclusion addresses losses caused by the impact of changes or extremes in outside temperature consistent with the forces of nature, and not to changes or extremes in inside temperature more commonly associated with man.

Further, by beginning the exclusion with a reference to the dampness or dryness of the atmosphere and then referring to temperature changes and extremes, the exclusion language encourages the impression that "temperature" refers to ambient temperature, not artificially induced inside temperature. *See United States Fidelity & Guar. Co. v. Wilkin Insulation Co.,* 578 N.E. 2d 926, 933 (Ill. 1991)("the ordinary, popular meaning of the phrase 'the atmosphere' connotes the external atmosphere which surrounds the earth….").[5] This juxtaposition of excluded causes does not serve to clarify the policy's intent and as it is the insurer, not the

---

[5] In *Blaine Constr. Corp. v. Insurance Co. of N. Am.,* 171 F.3d 343 (6th Cir. 1999), the Sixth Circuit, addressing a similar problem of construction, wrote: "If INA had wanted to exclude dampness or dryness generally, the layman might think, there would have been no need to use the word, 'atmosphere' at all. The insurance company could simply have described the excluded peril as 'dampness or dryness.' By adding a word that would not have been necessary if the company had not intended to refer to the 'atmosphere' in the most commonly used sense, and <u>by speaking in the next breath of 'extremes or changes in temperature,' INA ran the risk, it seems to us, of being taken to mean that it was simply talking about weather conditions</u> - - the extreme heat and humidity of Florida, *e.g.,* or the sub-zero temperatures of Alaska." *Id.* at 351 (emphasis supplied).

policyholder, who has drafted the language and is uniquely capable of clarifying its intent, the ambiguity must be interpreted in favor of coverage.

### C. The Commonly Accepted Meaning: What's the Temperature?

Because the law focuses on how an average person would interpret the policy language, the Court is required to determine whether there is an inherent ambiguity in the word, "temperature." As a practical matter, it seems apparent there is. If asked: "What is the temperature?", the natural response would be to give the outside temperature and only upon clarification to give the inside temperature. The term, "temperature", from a lay perspective, has an irreducible ambiguity and to the extent it does not, it commonly refers not to the temperature inside a building, but to the temperature outside. Continental could easily have eliminated this inherent ambiguity by drafting the exclusion to answer the natural question or by defining "temperature" to do so.[6]

### D. The Case Law

There is no authority directly on point in the First Circuit or in Maine.[7] The courts that have considered the temperature exclusion have, almost without exception, concluded that there is ambiguity in the term, which must be interpreted against the insurer. In *Burnham & Brady, Inc. v. Graphic Arts Mut. Ins. Co.,* No. 96-0255722S, 1998 Conn. Super. LEXIS 1976 (July 6, 1998), the Connecticut Superior Court addressed similar facts and concluded the phrase, "changes in temperature", is ambiguous, "because it can be read to refer either to indoor or outdoor

---

[6] It cannot be said that insurers have been unaware of the ambiguity of clauses like this. As long ago as 1965, Judge Friendly interpreting a similar provision agreed the language "is not a model of clarity." *Aetna Ca. & Surety Co. v. Yates,* 344 F.2d 939, 940-41 (5th Cir. 1965)("Loss caused by inherent vice, wear and tear, deterioration; rust, rot, mould, or other fungi; dampness of atmosphere, extremes of temperature; contamination; vermin, termites, moths or other insects.") The same can be said of this language forty years later.

[7] The contract contains no choice of law provision and in its absence, state of Maine substantive law applies. *See* 28 U.S.C. § 1332, 1446.

temperature." *Id.* at * 7.  Having found ambiguity, it interpreted the phrase against the insurer and found coverage was not excluded.

*Burnham* cited three cases:  *Purpura v. Continental Cas. Co.,* 533 N.Y.S. 2d 302 (N.Y. App. Div. 1988); *Fawcett House, Inc. v. Great Central Ins. Co.,* 159 N.W. 2d 268 (Minn. 1968); and, *Kuo v. Home Ins. Co.,* 502 N.Y.S. 2d 756 (1986).  In *Purpura,* the Appellate Division of the Supreme Court of New York concluded that "change of temperature" could "reasonably refer to changes in weather."  *Purpura,* 143 N.Y.S. at 303; *accord Fawcett House,* 159 N.W. 2d at 270 ("We readily agree with the trial court that the clause is ambiguous, requiring construction.").[8]  Other courts have arrived at the same conclusion.  In *St. Paul Fire & Marine Ins. v. General Injectables,* No. 98-0737, 2000 U.S. Dist. LEXIS 2597, * 21 n.7 (W.D. Va.), the United States District Court, in dicta, addressing a similar exclusion, stated:  "Reasonably interpreted, this provision would likely only apply to losses due to changes in weather, not changes in temperature due to the interruption of power to a refrigeration unit."  *See Blaine Constr.,* 171 F.3d at 351.

*Hartford Fire Ins. v. B. Barks & Sons, Inc*., No. 97-7919, 1999 U.S. Dist. LEXIS 7733, * 22-24 (E.D. Pa. May 27, 1999) is the sole case to the contrary.  In *B. Barks,* the insured was in the business of freezing and maintaining perishable food in its refrigerated warehouse and it was insured under a commercial property insurance policy covering business loss.  It sustained a loss when the temperatures inside the warehouse increased and spoiled the food.  The policy contained an exclusion for losses caused by "changes in or extremes of temperature".  *Id.* at * 23.  *B. Barks* concluded that because the loss arose from exposure to elevated temperatures in the B. Barks' warehouse, "the alleged losses come within the exclusions for "loss or damage caused by

---

[8] *Kuo*, which is the third case cited in *Purpura,* arrives at the same conclusion; the exclusion language in *Kuo* is "change of temperature or humidity".  *Kuo,* 502 N.Y.S. 2d at 758-59.

7

or resulting from … (b) Changes in or extremes in temperatures… if the loss is to personal property." *Id.* at * 24. Continental correctly argues that *B. Barks* supports its contention that the similar language in its policy excludes coverage here. However, on this point, *B. Barks* is a summary opinion. There is no indication *B. Barks* was presented with the question of whether the phrase, "changes in or extremes of temperature", is ambiguous. This Court declines to follow *B. Barks.*

**IV. Conclusion**

This Court GRANTS Plaintiff Old Town Canoe Company's Motion for Partial Summary Judgment. Defendant Continental Casualty Company may not exclude Old Town Canoe Company's claim on the basis of the "extremes of temperature, changes of temperature" exclusion.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 20th day of October, 2005